IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT JEFFERY AKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:13cv42 |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Robert Jeffery Aker ("Aker") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Aker alleges that Administrative Law Judge ("ALJ") erred by failing to properly account for his back pain, improperly discounting the opinion of his treating nurse practitioner, and failing to consider his impairments in combination. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Aker's Motion for Summary Judgment (Dkt. No. 12), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 14.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Aker failed to demonstrate that he was disabled

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

under the Act.[2]  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).  The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Aker protectively filed for SSI and DIB on October 7, 2009, claiming that his disability began on August 1, 2008.[3]  R. 18.  The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 109–114; 124–127.  On August 17, 2011, ALJ Geraldine H. Page held a video hearing to consider Aker's disability claim. R. 36–64.  Aker was represented by an attorney at the hearing which included testimony from Aker and vocational expert Mark A. Hileman. R. 36–64.

On September 14, 2011, the ALJ entered her decision analyzing Aker's claim under the familiar five-step process, and denying Aker's claim for benefits.[4]  R. 15–30.  The ALJ found that

---

[2]  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work.  Rather, a claimant must show that his impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience.  See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3]  Aker's date last insured is September 30, 2010.  R. 18, 67.  He must show that his disability began before that date and existed for twelve continuous months to receive DIB.  42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner

Aker suffered from the severe impairments of degenerative disc disease ("DDD"), status post two surgeries, and anxiety. R. 20. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 21. The ALJ further found that Aker retained the RFC to perform sedentary work with the following limitations: he can lift 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8–hour workday; stand and walk for 2 hours in an 8–hour workday; occasionally climb ramps and stairs, balance, kneel, stoop, and crouch; and never crawl or be exposed to heights or machinery hazards. R. 22. The ALJ also found that Aker must change postural positions from sitting to standing every 45 minutes without leaving his workstation, and that he is limited to only occasional interaction with coworkers and the public. R. 22. The ALJ determined that Aker could not return to his past relevant work as mason, brick worker, or welder (R. 28), but that Aker could work at jobs that exist in significant numbers in the national economy: namely addressing clerk, circuit board checker, and surveillance system monitor. R. 29. Thus, the ALJ concluded that he was not disabled. R. 30. On January 16, 2013, the Appeals Council denied Aker's request for review (R. 1–4), and this appeal followed.[5]

## ANALYSIS

Aker generally asserts that the ALJ's decision is not supported by substantial evidence. Pl. Br. Summ. J. p. 7. Specifically, Aker contends that the ALJ improperly evaluated his complaints of back pain, gave improper weight to the opinion of a family nurse practitioner

---

at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Aker submitted additional evidence to the Appeals Council in support of his appeal. R. 1–5. The Appeals Council found that the evidence presented by Aker constituted new information about a later time and did not provide a basis to change the ALJ's decision. Consequently, the Appeals Council declined to make this new evidence part of the administrative record. R. 1–5. Aker did not submit the evidence presented to the Appeals Council to the Court; thus, the evidence is not a part of the record in this matter and cannot be considered by this Court.

regarding the severity of his back pain, and failed to properly consider the cumulative effect of his mental impairments with his physical impairments, as directed by the regulations. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision on each ground, and recommend affirming the final decision of the Commissioner.

**Pain Complaints and Treating Physician Opinion**

Aker was born on August 18, 1962, and has an eleventh grade education, although he reads at a fifth grade level. R. 22, 28. Aker previously worked as a mason, brick worker and welder (all three performed at the skilled, heavy exertional level). R. 28. Aker alleges that he became unable to work on August 1, 2008 due to back pain. R. 42–43, 47.

On October 29, 2008, Aker presented to the emergency room with complaints of lower back pain. R. 294. A physical examination revealed vertebral tenderness, but Aker's motor strength, sensation, reflexes and gait were normal, and a straight leg raising test was normal. R. 296. He was released home with pain and muscle relaxant medications. R. 297.

Aker did not receive any further treatment for his back until September 17, 2009, when he presented in the emergency room with complaints of low back pain that he described as "controlled until last week." R. 326. He also complained of numbness in his right foot for two to three weeks. R. 326. An x-ray of Aker's lumbar spine showed disc degeneration with associated degenerative arthritic changes at L5-S1. R. 330. Aker followed-up with Carolyn L. King, FNP, at Bland County Medical Clinic for his low back pain, complaining that pain medications were not helping at all. R. 341–42. FNP King prescribed Lortab, Amrix, and Neurontin and ordered an MRI. The MRI revealed multi-level degenerative disc disease and facet arthritis, with a right paracentral disc herniation at L4-5, resulting in spinal canal and right lateral recess stenosis. R. 335.

4

On November 10, 2009, Aker underwent a right L4-5 partial hemilaminectomy and microdisectomy. R. 378–80.  Post-operative physical therapy notes indicate that Aker was functioning better than baseline, his gait was steady and controlled, but he had numbness in his right toes and pain at the incision site. R. 347, 352–53.  A month after the surgery, Aker stated that he no longer had pain radiating down his right leg, although he continued to have mild numbness and tingling in his right toes and pain at the incision site. R. 376.  Aker's physical exam was normal, his spine was non-tender, his gait was normal, and his strength was 5/5 with mild right hamstring weakness.  He was advised to continue with minimal to no weight lifting while he recovered from surgery, and was prescribed Neurontin and Flexeril.  R. 376.

On January 8, 2010, state agency physician Thomas M. Phillips, M.D., performed a physical residual functional capacity assessment and found that Aker could perform a limited range of medium exertional work within 12 months of the onset of his condition. R. 71–72, 74–75.  On May 6, 2010, state agency physician Richard Surrusco, M.D., reviewed Aker's medical records and affirmed Dr. Phillips' prior assessment. R. 91–97.

Aker followed up with Bland County Medical Clinic in February 2010, complaining of increased back pain after feeling something "pop" in his back while yawning. R. 414.  He described pain radiating down the right lower extremity.  He also reported smoking one pack per day, despite his doctors' prior admonitions to stop smoking, and feeling depressed. R. 414. An x-ray of the lumbar spine revealed mild degenerative changes.  The treating nurse practitioner prescribed pain medication and muscle relaxers and recommended that Aker see his neurosurgeon. R. 415.

In March 2010, Aker followed up with UVA neurosurgery clinic, and reported that he had complete relief of right leg pain after his surgery, until about three weeks ago when he

5

yawned, heard a "pop" and felt immediate pain in his low back that radiated to his hip. R. 401. A MRI was taken on March 5, 2010, and showed a recurrent disc herniation at L4-5. R. 426–27.

On April 5, 2010, Aker saw FNP King for a check up, complaining of lower back pain. R. 409. Aker stated that he hadn't "had meds in 2 months," and was only taking Ibuprofen for pain. R. 409. FNP King diagnosed Aker with back pain, depression and anxiety. R. 410.

Aker presented to Mount Rogers Community Services Board for assessment on April 28, 2010. R. 478–84. He reported anxiety, inability to be around others, irritability, and sleep difficulty. He also described that he worries and that he destroys property. His mental status examination showed a labile and flat affect, but his speech, thought processes, appearance and thought content were unremarkable. R. 479. He was diagnosed with social phobia, and enrolled in an anger management group. R. 485. Follow up counseling sessions in May and June showed that Aker had a hard time being around others, but that he was accepted by the group. R. 487–88.

On May 28, 2010, Aker underwent a second L4-5 partial hemilaminectomy and diskectomy at the University of Virginia Medical Center for a recurrent right-sided disk herniation. R. 456–57. Upon discharge on May 29, 2010, Aker's pain was controlled with oral pain medication and he was ambulating without assistance. R. 453. On June 30, 2010, the surgeon, Mark Shaffrey, M.D. wrote to Michael Crews, D.O., at Bland County Medical Clinic, informing him that Aker tolerated the second surgery well, and that his pain was well controlled with medication. R. 491. Physical examination revealed that Aker's spine was minimally tender to palpation, his extremities were non-tender; he was alert and oriented; his strength was 5/5, except for right-sided foot dorsiflexor weakness and knee flexion weakness; his muscle tone was normal; sensation was intact; and deep tendon reflexes were intact. R. 491. Dr. Schaffrey

6

concluded that Aker was doing well after his surgery, and he was pleased that his radiating leg pain had improved. R. 491.

Subsequent progress notes from FNP King for the period of August through November 2010 indicate that Aker followed up at one month intervals and continued to complain of depression and low back pain, but no radiating leg pain. R. 497–99, 503–06, 507–08, 510–11. His physical examinations were normal, aside from paraspinal tenderness. They revealed full muscle strength in the lower extremities and intact deep tendon reflexes. Id. On August 30, 2010, Aker returned to Dr. Shaffery, who noted a fairly normal physical examination and concluded that no further neurosurgical follow up was necessary. R. 493.

In September 2010, Aker visited FNP King, complaining of low back pain. His physical examination was normal, aside from tenderness in the area of his surgical scar and his left leg slightly weaker than his right on push/pull. R. 508. On September 23, 2010, FNP King wrote a letter to Aker's attorney, which was co-signed by Dr. Crews, stating, "I agree that Mr. Aker cannot work a full-time position due to his medical illnesses. In my professional opinion, should Mr. Aker attempt to engage in substantial gainful employment, that he will suffer unscheduled absences from work each month due to the medical problems for which this office treats him." The letter was not supported by any additional information or functional capacity assessment. In October 2010, Aker tested positive for marijuana, and he was advised that he would no longer be prescribed narcotic substances. R. 497.

Aker had another MRI of his lumbar spine on May 27, 2011, which showed postoperative changes, multilevel degenerative disc disease with no recurrent disc herniation, and marked epidural fibrosis at L4-5 on the right side. R. 537. On August 10, 2011, Aker visited Kenneth M. McIntyre, M.D., requesting a functional capacity assessment and narcotics for pain. R. 540.

Dr. McIntyre referred Aker for a functional capacity assessment.[6] R. 541. Dr. McIntyre noted that Aker had failed a drug screen, did not come in for a pill count, and had been terminated with respect to pain medication. R. 541.

Based upon these records, the ALJ found that Aker's back pain and anxiety were severe impairments, and that Aker is capable of performing a limited range of sedentary work. R. 20–22. Aker disputes the ALJ's conclusion, arguing that the ALJ did not fully "probe" the significance of his back problems, and that the ALJ "virtually ignored" all of the medical records generated after his second surgery that documented his complaints of back pain. Pl.'s Br. Summ. J. 8.

Aker's allegation that the ALJ did not properly consider all of the medical records and opinion evidence in this case is unfounded. The ALJ stated that she considered all of the evidence, and her decision includes a thorough chronology of Aker's medical records and analysis of the medical opinions. R. 18–28. See Reid v. Comm'r of Soc. Sec., 13-1480, 2014 WL 2958800 (4th Cir. July 2, 2014) ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word.") Aker does not point to any specific evidence that the ALJ failed to consider. Rather, Aker simply argues that, based upon the facts in the record, the ALJ should have found that he was incapable of performing sedentary work. Aker's argument is nothing more than an invitation to re-weigh the evidence and make a de novo determination of the proper RFC in this matter, which I am not permitted to do under the regulations. The issue before this court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—

---

[6] There is no indication in the record that Aker received a functional capacity assessment.

8

defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

Having reviewed the whole record, there is substantial evidence to support the ALJ's conclusion that Aker is capable of performing a limited range of sedentary work. Aker bears the burden of proving not only that he has a severe impairment, but that it is so severe that it prevents him from engaging in any substantial gainful activity that exists in the national economy. Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986). In support of his claim, Aker relies upon his subjective statements of back pain, as well as the May 27, 2011 MRI that shows multi-level degenerative disc disease and marked epidural fibrosis at L4-L5, as objective evidence of back pain. A claimant cannot make a showing of disability merely by demonstrating that he experiences pain. Green v. Astrue, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays, 907 F.2d at 1457–58) ("An individual does not have to be pain-free in order to be found 'not disabled.'"), report and recommendation adopted, 3:10CV764, 2011 WL 5599421 (E.D. Va. Nov. 17, 2011). Rather, the pain must be so severe as to prevent the claimant from performing any substantial gainful activity. Foster v. Heckler, 780 F.2d 1125, 1129-30 (4th Cir. 1986). Although Aker's records indicate that he suffers from back pain, they do not demonstrate that he is functionally unable to perform the limited range of sedentary work set forth by the ALJ.

Here, the ALJ acknowledged that Aker had medically determinable impairments of back pain and anxiety, and that those medically determinable impairments could reasonably be expected to produce his alleged symptoms. R. 24. However, the ALJ found that Aker's statements concerning the intensity, persistence, and limiting effects of his symptoms were only partially credible when viewed against the medical records as a whole. R. 14.

9

The record reflects that Aker's back pain was well controlled until September 2009. R. 326. Aker underwent surgery in November 2009, which successfully alleviated his symptoms until February 2010. R. 347, 352–53, 376. Aker underwent a second surgery in May 2010, which was likewise successful. R. 453, 491. Post-operative notes indicate that Aker's pain was well controlled with pain medication, and Aker was pleased with the results of the surgery. R. 25, 453, 491. The subsequent progress notes reflect that Aker complained of back pain, yet he was not taking his pain medication as prescribed. R. 28, 326, 510. Aker was eventually prohibited from taking prescription pain killers due to positive drug screens. R. 26, 497, 540–41.

Aker argues that the ALJ should have given more weight to the opinion of FNP King, co-signed by Dr. Crews, that Aker would be unable to work a full-time position due to his medical illnesses and that he would have unscheduled absences from work each month. R. 495. The ALJ considered FNP King and Dr. Crew's opinion and gave it little weight, finding that it failed to identify specific functions that Aker could not perform, was inconsistent with his treatment notes, and was contradicted by his failure to use medication for periods of time.[7] R. 27–28.

A treating physician's opinion is not automatically entitled to controlling weight. Treating physicians' opinions are given controlling weight only if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); Saul v. Astrue, Civ. Action No. 2:09-cv-1008, 2011 WL 1229781 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical

---

[7] Nurse Practitioners are not "acceptable medical sources" under the regulations. 20 C.F.R. § 416.913(a). However, an ALJ is required to at least consider the opinion of such sources, and they may be used to show the severity of an individual's impairment and how it affects the individual's ability to function. SSR 06-03p; Foster v. Astrue, 826 F. Supp. 2d 884, 886 (E.D.N.C. 2011). Here, FNP King's opinion was co-signed by Dr. Crews, who is an "acceptable medical source" under the regulations, and who qualifies as a treating physician in this case.

opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

Here, the ALJ considered FNP King and Dr. Crew's opinion regarding Aker's functional capacity, and found that it was not supported by the record as a whole. R. 27–28. As noted above, the records reflect that Aker's pain was controlled when he took his medicine as prescribed. Further, physical examinations after Aker's second surgery were largely normal, aside from minimal tenderness in his low back. R. 491, 498, 510–512, 515–524, 493, 504, 508, 511. FNP King's opinion is also undermined by treatment notes showing improvement after each surgery, and Aker's failure to use medication for periods of time. R. 326, 510.

The ALJ's decision is also consistent with, and more limited than, the other opinion evidence in the record. R. 71–72, 74–75, 91–97. No other treatment providers or reviewing physicians found that Aker was incapable of performing sedentary work. Thus, the record supports the ALJ's decision to give FNP King and Dr. Crew's opinion little weight, and find that Aker is capable of performing a limited range of sedentary work.

**Cumulative Effect of Impairments**

Aker's arguments in his brief and at the hearing before this Court focused on the ALJ's analysis of his back pain. However, in his brief, Aker also argues that the ALJ failed to analyze

11

the cumulative effect of his medical impairments; and specifically, that the ALJ did not consider the impact of his severe mental impairments on his ability to work. Pl.'s Br. Summ. J. 8. I find that the ALJ properly considered the combined effects of Aker's impairments, both mental and physical.

Where a claimant has multiple impairments, the ALJ must consider the combined effect of those impairments in determining whether the claimant is disabled. 20 C.F.R. § 404.1523; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity." Id. at 50. In addition to "not fragmentiz[ing]" the effect of the claimant's impairments, "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id. at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)). "[A]n ALJ need not explicitly state that he or she has considered a claimant's impairments in combination. What matters is whether it is discernible from the ALJ's decision that he or she did so." Jones v. Astrue, 2011 WL 1877677, at *12 (W.D. Va. May 17, 2011).

Here, the ALJ explicitly found in her opinion that Aker did not have an impairment or combination of impairments that met one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15. Furthermore, the ALJ's written opinion reveals that she thoroughly considered all of the evidence relating to Aker's alleged physical and mental impairments when developing an RFC and finding Aker not disabled. Indeed, the ALJ incorporated both exertional and nonexertional limitations in Aker's RFC (R. 22) and the ALJ's hypothetical questions to the vocational expert addressed all of these limitations. R. 53–57. It is apparent from the RFC itself that the ALJ accounted for the cumulative impact of Aker's

12

impairments as supported in the record, providing restrictions that are both mental (e.g. "limited to occasional interaction with co-workers and the general public") and physical (e.g. "claimant cannot lift more than 15 pounds occasionally"). R. 19. Aker fails to state with any degree of precision how the restrictions provided for in the RFC neglect to address any combined impact of Aker's mental and physical impairments. Therefore, I find that the ALJ did not fail to analyze the combined effect of Aker's medical problems.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Aker's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: July 17, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge